George W. Draper III, Judge
I dissent from the principal opinion. In Adams By and Through Adams v. Children’s Mercy Hosp., 832 S.W.2d 898 (Mo. banc 1992),[1] this Court summarized the *572 arguments supporting and refuting whether the legislature’s imposition of the damages cap in section 538.210, RSMo 1986, was rationally related to its intended purpose of alleviating the- perceived malpractice insurance “crisis” that occurred in Missouri in the early 1980s. This Court recognized, “Both sides offer an array of evidence that both supports and refutes the existence of a ‘crisis’ in medical malpractice premiums — enough evidence, in fact, that at the very least, it is a debatable proposition that such a crisis does in fact exist.” Adams, 832 S.W.2d at 904. The existence of a “crisis” was questioned again in 2010 by Judge Wolff in Klotz v. St. Anthony’s Medical Center, 311 S.W.3d 752 (Mo. banc 2010), in which he opined, “The General .Assembly enacted the limits on noneconomic damages in response, to what it perceived as a serious problem in the tort and insurance liability system ... [in] that the legislature considered malpractice litigation to be a crisis, but it seems a rather slow-moving crisis, more a trickle than a flood.” Klotz, 311 S.W.3d at 773.
A clear, cogent ‘argument exists that this medical malpractice “crisis” was manufactured and continues to be exacerbated today by a special interest group that persistently labels, for shock value, and characterizes some jurisdictions as “judicial hellholes.” These characterizations and the underlying “support” for these characterizations have been criticized roundly. See e.g., Adam Liptak, The Worst Courts for Business? It’s a Matter of Opinion, N.Y. Times, December 24, 2007, at A10; Douglas A. Kysar, Thomas O. McGarity, and Karen Sokol, Medical Malpractice Myths and Realities: Why an Insurance Crisis is not a Lawsuit Crisis, 39 Loy. L.A. L. Rev. 785, 804 (August 2006); and Elizabeth G. Thornburg, Judicial Hellholes, Lawsuit Climates and Bad Social Science: Lessons from West Virginia, 110 W. VA. L. Rev. 1097, 1103 (Spring 2008). Despite the clearly faulty premise, this special interest group’s tactics are effective at achieving its desired purpose: To appeal to the voting public, to scare state politicians into making changes in the law in order to ameliorate the fabricated “judicial hellhole” label, and to oust judges whose rulings do not Comport or align with the group’s'purported interests. Judicial Hellholes, 110 W. Va. L. Rev. at 1103.
It should be noted our legislature took subsequent remedial measures in the 2015 session to amend section 538.210 to increase the noneconomic damages caps for personal injury and wrongful death, including .an adjustment to account for inflation. 2015 Mo. Legis. Serv. S.B. 239 (West).[2] Perhaps these subsequent remedial measures serve as recognition that the perceived “crisis” never existed, or at least has abated.
The foregoing argument could have been asserted to challenge section 538.210 under a rational' basis test, but it was not raised here. I respectfully dissent.

. However, I express no opinion as to the validity of these changes because the amendment is not before the Court in this case.